243 S.W.2d 111 (1951)
GREENWOOD
v.
BRIDGEWAYS, Inc., et al.
No. 28126.
St. Louis Court of Appeals, Missouri.
October 16, 1951.
Rehearing Denied November 15, 1951.
*112 Walther, Hecker, Walther & Barnard, Harold F. Hecker, and George W. Cloyd, all of St. Louis, for appellants.
Henry C. Stoll, St. Louis, for respondent.
WOLFE, Commissioner.
This is an action for damages arising out of personal injuries that plaintiff sustained when the automobile in which she was a passenger was struck by a tractor driven by defendant Gus B. Johnson and belonging to defendant Bridgeways, Inc. There was a verdict and judgment for the plaintiff in the sum of $2,750, from which the defendants prosecute this appeal.
David Greenwood, the plaintiff's husband, was driving a Nash sedan eastwardly on Gratiot Street and his wife and three children were riding with him. He had been driving toward the intersection of Sixth Street and intended to go eastwardly to Broadway to an army surplus store located there. His wife wanted a box in which to keep their baby's toys and for this purpose Greenwood had decided to buy a foot locker that he had seen advertised by the store to which they were going. Gratiot Street in this vicinity is a one-way street for eastbound travel. As he approached the intersection he reduced his speed from about 20 miles per hour to 10 or 15 miles per hour at the intersection, where he shifted into second gear, and started to cross Sixth Street. Before entering Sixth Street he sounded his horn but heard no other horn sounded. As he went into the intersection he could see 25 or 30 feet to the south and saw nothing approaching within that distance. He was almost to the center of Sixth Street when he first saw the defendant's tractor about 25 feet south of the south curb line of Gratiot Street, according to the testimony he gave upon trial, but he had previously testified by deposition that when he first saw the tractor it was only 5 feet away. There was a truck parked at the intersection that prevented a clear view to the south.
After Greenwood's car had proceeded almost to the center line of Sixth Street and he had observed the tractor 25 feet to the south he applied his brakes. He said that he stopped within 6 to 8 feet, but the tractor came on striking his car. Both vehicles came to rest facing to the northeast. Immediately after the collision Greenwood stated that he saw the tractor too late to get out of its way.
The plaintiff testified that as the car got into the intersection she saw the tractor 30 or 40 feet to the south headed toward them, and screamed. Her husband applied the brakes bringing the car to a stop before the tractor collided with it. The plaintiff *113 was caused to fall or was thrown from the Nash automobile by the collision and as a result suffered bruises, aggravated arthritis, and a nervous condition that has persisted since that time.
Defendant Johnson said that the Nash car came into his line of travel at the rate of about 20 miles per hour directly in front of the tractor which he was driving for Bridgeways, Inc. At the time the tractor was traveling at the rate of 18 miles per hour and could have been stopped at that speed in 10 to 12 feet. Johnson stated that he did not see the car approach or enter the intersection, but saw it for the first time when it was about 10 feet from him.
Dr. Robert E. Britt, who specialized in nervous and mental diseases, was called as a witness and testified that he had treated the plaintiff, who was afflicted with a psychosis of the depressive type which caused her to suffer from despondency. After the doctor had related the nature and extent of his examination and treatment of the plaintiff, plaintiff's counsel asked a hypothetical question in which he sought to set out events preceding the nervous condition described and to inquire of the doctor his expert opinion as to the cause of the plaintiff's condition. Counsel for the defendants interposed an objection to the question and was asked by the court to supply any facts that he considered lacking in the presented hypothesis. In compliance with this request, he added to the question that which he considered necessary, and the doctor being asked to base his answer upon all of the facts thus hypothesized by both attorneys stated that in his opinion the neurosis resulted from the accident.
It is contended by the defendants that the court erred in permitting the question to be answered, but it appears from the record that the accepted procedure was followed by the court. When there is an objection to a question such as the one asked, the nature of the objection should be specifically stated so that the court and opposing counsel are informed of the omissions complained of. Edmondson v. Hotel Statler Co., 306 Mo. 216, 267 S.W. 612; Morton v. St. Louis-San Francisco Ry. Co., 323 Mo. 929, 20 S.W.2d 34. After the omissions had been supplied by defendants' counsel and had been made a part of the question by the court, it did not matter how valid the original objection might have been, for the question had been corrected to meet the objection, and the doctor was properly permitted to answer. Plater v. W. C. Mullins Const. Co., 223 Mo. App. 650, 17 S.W.2d 658; Streeter v. Washington Fidelity Nat. Ins. Co., 229 Mo. App. 33, 68 S.W.2d 889.
The other assignments of error have to do with instructions given and refused by the court. The first instruction complained of is designated plaintiff's instruction No. 1, and is as follows: "The court instructs the jury that if you find and believe from the evidence, that on the occasion in question the Nash automobile in which plaintiff was a passenger was being operated eastwardly on Gratiot Street into and in the intersection with Sixth Street and that defendant Johnson then and there failed to exercise the highest degree of care in the control and operation of the tractor he was driving in that he negligently and carelessly failed to keep and maintain a reasonably careful and vigilant lookout ahead and laterally for eastbound vehicles as he approached said intersection, if you find he did so fail, and that he drove the tractor into said intersection toward the path of the Nash automobile and into collision with said automobile, without slackening the speed or deviating the course of said tractor or giving warning of his approach, if you find such to be the fact, and if you find that it was negligence on his part to operate said tractor in the manner aforesaid and that as a direct result of said negligence, if any, plaintiff was injured, if you find she was, and that on said occasion plaintiff was in the exercise of due care for her own safety, and that Johnson was then and there the agent and servant of defendant Bridgeways, Inc. operating said tractor in its behalf in the course and scope of his employment, if so, then your verdict should be in favor of plaintiff and against the defendants."
*114 It is contended that the instruction contains the same error condemned in Rosenkoetter v. Fleer, Mo.Sup., 155 S.W.2d 157, in that it fails to require a finding as to the relative position of the two vehicles upon entering the intersection. The instruction given in this case does not, however, suffer from the omissions that were noted in the Rosenkoetter case, for it required a finding that the automobile was entering the intersection as the tractor approached the intersection; so it appears that in this respect it was proper.
Another point raised regarding the instruction is that it fails to require a finding that defendant Johnson had reason to believe that a collision would occur unless precautionary measures were taken and that it fails to require that the defendant saw or should have seen the automobile in which the plaintiff was riding. It is, of course, true that actionable negligence is the breach of a duty to protect another from injury, but the breach or failure to act must arise after the defendant has actual or imputed knowledge that his failure to do some act would be likely to produce an injury to the plaintiff. Here the defendant's duty arose when he saw or by the exercise of the highest degree of care should have seen that the car in which the plaintiff was riding was likely to proceed into the path of the tractor. After this became or should have become apparent to defendant Johnson, the duty to slacken the speed of the tractor, change its course, or sound a warning, then arose and the jury should have been so instructed. Davidson v. St. Louis-San Francisco Ry. Co., Mo. Sup., 229 S.W. 786; Prague v. Eddy, 358 Mo. 327, 214 S.W.2d 521; Devoto v. St. Louis Public Service Co., Mo.App., 238 S.W.2d 66.
In discussing an instruction very similar to the one given here, this court, in Stakelback v. Neff, Mo.App., 13 S.W.2d 575, loc. cit. 577, stated: "Even though it is true that this instruction counts upon primary negligence, and not the humanitarian doctrine, there was nevertheless no duty upon defendant to take any of the precautions hypothesized therein, unless there was apparent danger of a collision, which basic fact the jury was not required to find. It cannot be said that the law imposes the duty upon the driver of an automobile, upon approaching and entering an intersecting street, to stop, decrease the speed of, or change the course of, his car, merely because he sees another automobile in the street ahead of him. To the contrary, such duty to act would clearly not arise, unless the exercise of due care upon the part of the driver would lead him to believe that otherwise a collision would occur."
The omission in both that instruction and the one under consideration is the same and because of the omission it is erroneous. Since the case must be retried it should be mentioned that if the instruction were corrected to eliminate the error noted, the evidence supports the negligence hypothesized and it is not erroneous in that respect.
Another instruction given is as follows: "With reference to the charges of negligence against the defendants in this case, you are instructed that if from the evidence and these instructions of the Court, you find that defendants were negligent as submitted in the other instructions, and the negligence, if any, of the defendants, and the negligence, if any, of plaintiff's husband, directly concurred, combined and contributed to cause Mrs. Greenwood to sustain injury, and that Mrs. Greenwood was in the exercise of ordinary care for her own safety, then it would be your duty to return a verdict in favor of the plaintiff and against the defendants, because if you find that the defendants were negligent as submitted to you in these instructions, and if their negligence directly contributed to cause injury to the plaintiff, then the defendants, even if less negligent than plaintiff's husband, could not make use of the concurring negligence of plaintiff's husband to defeat the claim of the plaintiff against the defendants."
It is asserted that this instruction is erroneous because it fails to specify what acts of the plaintiff's husband might be considered negligent and gives the jury a roving *115 commission. This is not an instruction seeking to charge liability for a negligent act, but it is given merely to inform the jury that if the defendants were negligent as charged in the other instructions they are liable to plaintiff even though plaintiff's husband was also negligent in any respect, consequently specific acts of negligence need not be set out in such an instruction. Schwinegruber v. St. Louis Public Service Co., Mo.App., 241 S.W.2d 782.
The instruction while not aptly phrased does not appear prejudicially erroneous, but upon retrial there should be a change in the concluding clause; "because if you find that the defendants were negligent as submitted to you in these instructions, and if their negligence directly contributed to cause injury to the plaintiff, then the defendants, even if less negligent than plaintiff's husband, could not make use of the concurring negligence of plaintiff's husband to defeat the claim of the plaintiff against the defendants." It is the function of instructions to state the law applicable to the evidence and not to explain the reason for the law as this seems to attempt. Such clauses can rarely be added without tending to be argumentative, and in this case the statement to the effect that the defendants could "not make use of" the concurring negligence to "defeat" plaintiff's claim possibly conveyed the impression to the jury that the defendants were attempting an unauthorized defense. The instruction is similar in some respects to the one condemned in Rothweiler v. St. Louis Public Service Co., Mo.Sup., 234 S. W.2d 552, and it should not be used upon retrial.
An instruction offered respecting the tractor having the right of way if it arrived at the intersection before or at approximately the same time as the automobile was properly refused because it was not supported by the evidence. Defendant Johnson did not see the car enter the intersection, nor did he indicate by any testimony that he relied upon having a right to proceed first through the intersection.
The final assignment is that the court erred in refusing to instruct the jury that if the husband and wife were engaged in a joint enterprise and the husband was guilty of contributory negligence the plaintiff could not recover. The appellants in support of this contention rely upon the fact that the plaintiff's husband was driving to a store to make a purchase for the family. Such evidence does not bring the case within the theory of joint enterprise, for there was no evidence that the wife exercised any ownership or control over the automobile being driven by her husband. In passing upon a situation similar in all respects, we stated in Silsby v. Hinchey, Mo. App., 107 S.W.2d 812, loc. cit. 815: "Before the wife may be held to have been engaged in a joint enterprise with her husband so that his negligence, if any, is imputable to her, there must be some such showing in the case as that she owned the automobile or had an interest in it, or else that the mutual purposes to be served by the particular journey were of such an unusual character as to have given rise, not only to a joint responsibility, but also to the legal right of joint control, on the part of both husband and wife as regards the operation of the automobile. * * * But, on the other hand, where all that appears in the case is that the wife was merely riding with her husband in the family automobile, which he was driving at the time, and that their purpose was merely to serve their mutual pleasure or to transact the usual and ordinary affairs of the family, with no right of joint control disclosed, then the trip is not to be regarded as a joint enterprise or venture in the sense that the husband's negligence, if any, is to be imputed to his wife."
For the error noted, it is the recommendation of the Commissioner that the judgment be reversed and the cause remanded for a new trial.
PER CURIAM.
The foregoing opinion of WOLFE, C., is adopted as the opinion of the court.
The judgment of the circuit court is accordingly reversed and the cause remanded for a new trial.
*116 BENNICK, P. J., and ANDERSON, J., concur.
RUDDY, Judge, not sitting because not a member of the court at the time of argument and submission.