Armarie Bounds **GALLOWAY**, Administratrix For the Estate of William Raymon Galloway, Plaintiff,

v.

Anne **KORZEKWA**, Administratrix of the Estate of Elsie Pearson, Defendant.

No. EC 7178–S.

United States District Court, N. D. Mississippi, E. D.

Aug. 16, 1972.

---

17. The parties have stipulated the essential jurisdictional facts.

See also D.C., 339 F.Supp. 801.

Lawrence Chandler, Henry L. Lackey, Calhoun City, Miss., for plaintiff.

W. P. Mitchell, of Mitchell, Rogers & Eskridge, Tupelo, Miss., for defendant.

## MEMORANDUM OF DECISION

ORMA R. SMITH, District Judge.

This action was tried to the court without a jury at Oxford, Mississippi on June 20, 1972. At the conclusion of the trial the court made findings of fact and conclusions of law orally from the bench; taking the case under advisement for final determination at a later date. The court requested memoranda of authorities from the parties on three legal issues: namely, a) whether the conduct of Mrs. Pearson at the time of the accident amounted to gross negligence under Alabama decisions; b) whether the law of Mississippi, or the law of Alabama applies; and c) whether a member of the joint venture may sue another member thereof for damages sustained because of the negligence of such other member in the performance of his duties in connection with the joint venture.

The court has received excellent memoranda from counsel and the action is now ripe for final decision.

The court will first consider the question of whether the Mississippi or the Alabama law applies in this action. The evidence shows that William Raymon Galloway (Galloway), plaintiff's decedent, during the latter years of his life, was a citizen of Calhoun County, Mississippi. At the time of his death, and for some time prior thereto, Galloway was engaged by an employer who required him to work in and around Pontotoc in Pontotoc County, Mississippi. Galloway had living quarters in Pontotoc and resided there the greater portion of his time. (Mrs.) Elsie Leona Pearson, a divorcee, lived in Pontotoc where she operated a drive-in restaurant. Mrs. Pearson had three children by her former marriage, one of whom was an infant. Galloway and Mrs. Pearson were friends and he often visited her in her home. Galloway was divorced from his first wife; had remarried, and was staying in Pontotoc, the place of employment, rather than in Calhoun County, the place of his residence and where his wife resided. She was employed there.

Mrs. Travis (Wanda) Brown, a sister of Mrs. Pearson, resided with her family in Atlanta, Georgia. Mrs. Brown and members of her family were occasional visitors in Pontotoc in the home of Mrs. Pearson. On these occasions, they met and visited with Galloway, who would come to the home of Mrs. Pearson while they were there.

Mrs. Pearson, her children and Galloway were invited to spend Christmas 1969 with the Browns in Atlanta. They accepted the invitation and drove to Atlanta from Pontotoc in Mrs. Pearson's automobile on December 23, 1969. During their visit in Atlanta, Galloway usually drove the Pearson car when it was used for transportation for any of the members of the household.

Galloway, Mrs. Pearson and the children completed their visit to the Brown home on the day after Christmas. They left Atlanta at approximately 10:30 on the night of December 26, 1969 in Mrs. Pearson's automobile on the return trip. When they left Atlanta, Galloway was driving the automobile and Mrs. Pearson was on the front seat with him. The two older children were asleep on the back seat, and the infant was asleep on a pallet placed on the floorboard of the automobile in front of the front seat. About five o'clock on the morning of December 27, 1969, approximately 8.1 miles east of Hamilton, Alabama on U. S. Highway No. 78, while enroute to Pontotoc, the Pearson automobile collided with a tractor-trailer combination unit owned by American Bakeries and driven by its employee Lewis Cameron. The bakery vehicle was returning to its warehouse in Birmingham, Alabama after having delivered a load of bread to its distribution office in Tupelo, Mississippi. Galloway, Mrs. Pearson

and the children were instantly killed in the collision.

There are many substantial differences between the law of Alabama, where the collision occurred, and the law of Mississippi, the place of residence of the parties, where the trip originated and to which the parties in the Pearson automobile were returning at the time of the fatal accident.

Alabama has a "Guest Law" statute which provides in substance that the owner, operator or person responsible for the operation of a vehicle shall not be liable for loss or damages arising from injuries to or death of a guest who is being transported without payment therefor, unless such injuries or death are caused by the willful or wanton misconduct of such operator, owner or person responsible for the operation of the vehicle used in such transportation. Title 36, § 95, Code of Alabama, 1958, recompiled. Mississippi has no such statute. Moreover, there is a marked difference between the measure of damages afforded survivors in a wrongful death action by the Alabama wrongful death statute, and those afforded such survivors by its Mississippi counterpart.

The Alabama Wrongful Death Statute, Title 7, § 123, Code of Alabama, 1958, recompiled, provides in part "a personal representative may maintain an action, and recover *such damages as the jury may assess* . . . for the wrongful act, omission, or negligence of any person . . . whereby the death of his testator or intestate was caused. . . ." (Emphasis supplied). The Alabama courts have held that this statute provides for the recovery of punitive as distinguished from compensatory damages. Bonner v. Williams, 370 F.2d 301 (5th Cir. 1966); Blount Brothers Construction Company v. Rose, 274 Ala. 429, 149 So.2d 821 (1962).

On the other hand, the Mississippi Wrongful Death Statute, Miss. Code Ann. § 1453 (Supp. 1971) provides for the recovery of compensatory damages. The statute provides: "In such action

the party or parties suing shall recover such damages as the jury may determine to be just, taking into consideration all the damages of every kind to the decedent and all damages of every kind to any and all parties interested in the suit." The Mississippi Supreme Court has held that a party may recover in a wrongful death action for "the present net cash value of the life of the deceased * * * at the time of [his] death. See, Reed v. Eubanks, 232 Miss. 27, 98 So.2d 132 (1957); Gordon v. Lee, 208 Miss. 21, 43 So.2d 665 (1949); New Deemer Mfg. Co. v. Alexander, 122 Miss. 859, 85 So. 104 (1920); Ashcraft v. Alford, 236 Miss. 25, 109 So.2d 343, 344; Bush v. Watkins, 224 Miss. 238, 80 So.2d 19 (1955). Damages may also be recovered by virtue of said section for: (1) any loss of companionship suffered by the statutory beneficiaries of the decedent on account of the death of the decedent, Gulf, Mobile and Ohio R. Co. v. White, 219 Miss. 342, 68 So.2d 458 (1953); (2) any pain and suffering which the decedent may have endured prior to his death, Avery v. Collins, 171 Miss. 636, 157 So. 695 (1934); and (3) any medical expense which may have been incurred by decedent. Jeffreys v. Clark, 251 Miss. 129, 168 So.2d 662 (1964).

The Mississippi Supreme Court has spoken quite clearly on this choice-of-law or conflict-of-law problem in two recent cases. Mitchell v. Craft, 211 So.2d 509 (1968) and Turner v. Pickens, 235 So.2d 272 (1970).

Mitchell v. Craft involved a case similar on its facts to the case at bar. Plaintiff Craft was the administratrix of the estate of L. W. Jackson, deceased. Defendant Mitchell was the administratrix of the estate of Hugo Mitchell, deceased. Both decedents were domiciled in Mississippi at the time of their deaths, their estates were being administered in Mississippi, and whatever expectations they may have had were centered in Mississippi. Jackson and Mitchell were killed in a two-car ac-

cident on a Louisiana highway two miles south of the Mississippi line.

Craft, Jackson's administratrix, filed suit in a Mississippi court seeking damages from Mitchell, the administratrix of Hugo Mitchell's estate, for the wrongful death of Jackson resulting from the above mentioned accident. At issue were the negligence of Mitchell, and the contributory negligence, if any, of Jackson. Louisiana retains the common-law doctrine of contributory negligence which bars recovery. On the other hand, Mississippi has had a comparative negligence statute since 1910, and comparative negligence represents a long-established, statutory and worthwhile policy in Mississippi. Miss. Code Ann. §§ 1454, 1455 (1956). In such a situation, the Mississippi Supreme Court, speaking through its Chief Justice, the late Honorable W. N. Ethridge, Jr., said:

> This case involves a choice-of-law or conflict-of-law problem in an action for wrongful death resulting from an automobile accident, in which plaintiff's decedent and defendant's decedent were in separate cars. Both decedents were domiciled in Mississippi, their estates are being administered here, and whatever expectations they might have had were centered in Mississippi. This State has a comparative negligence statute and Louisiana has the common-law rule by which contributory negligence bars recovery. We modify the previously existing rule in this jurisdiction, which applied invariably the law of the place of injury, and hold that under the factual situation existing in this case, the most substantial relationships of the parties and the dominant interest of the forum require application of Mississippi law, in accordance with the principles summarized in the Restatement (Second) Conflict of Laws sections 175, 145, 164 and 6 (Proposed Official Draft, Adopted May 24, 1968). 211 So.2d at 510.

Appellant argues that the trial court erred in applying the substantive law of Mississippi to a motor vehicle collision that occurred in Louisiana. Louisiana substantive law, she asserts, should apply, and in that State contributory negligence bars recovery. Appellee contends that both Mitchell and Jackson, as well as their guest passengers, who are not involved in this suit, were resident citizens of Mississippi; that both decedent drivers were traveling to their respective homes in Mississippi at the time of the collision; and that under the center-of-gravity or most substantial relationship rule, the substantive law of Mississippi is applicable, since the place of accident was purely fortuitous, and the interest of Mississippi in both decedents, their estates, and their expectations of their rights under Mississippi law, including its comparative negligence statute, is dominant. Id. at 512.

In summary, the rights and liabilities of the parties should be determined by the law of Mississippi, which has the most substantial relationship to the parties, rather than the law of Louisiana, where the injury occurred. Id. at 516.

The Mississippi Supreme Court followed Mitchell v. Craft in Turner v. Pickens, *supra*. Monroe Turner, the defendant in the case, Sylvia Pickens, Floyd Turner and Robert Thompson, plaintiffs, were all residents of Mississippi. Pickens, Thompson and Floyd Turner accompanied Monroe Turner in his pickup truck to Illinois. The purpose of the trip was to attend the funeral of Turner's brother and to visit relatives. On the return trip Monroe Turner, while driving the truck in the State of Illinois, lost control of the truck, turning it over. Thompson, Floyd Turner and Pickens were injured. Thompson, Floyd Turner and Pickens had agreed to help bear the expense of the trip.

On their return to Mississippi, Thompson, Floyd Turner and Pickens each filed suit for damages against Monroe Turner. From adverse judg-

ments, Monroe Turner appealed. In holding that the laws of the State of Mississippi, rather than the laws of Illinois, were controlling, the court said:

Appellant next argues that the trial court erred in failing to hold that the laws of the State of Illinois were controlling and that there was not proof of willful and wrongful misconduct on the part of appellant as required by the laws of that state. In applying the law of this state the trial court correctly followed our holding in Mitchell v. Craft [Miss.], 211 So.2d 509 (1968), wherein we modified the pre-existing rule which invariably applied the law of the place of injury and held that under factual situations such as in this case, the most substantial relationship of the parties and the dominant interest of the forum required the application of Mississippi law. 235 So.2d at 274.

■ In the action sub judice, at the time of the accident, and for a long time prior thereto, Mrs. Pearson and Galloway were Mississippi residents; their association originated in Mississippi; they were on a joint pleasure trip at the time to visit Mrs. Pearson's relatives in Atlanta; they were returning to Mississippi from this visit when the collision occurred; their estates are now being administered in Mississippi; the action is between their personal representatives and the fruits of the recovery, if any, will inure to beneficiaries who are residents of Mississippi.

There is a marked difference in the law of the two states. Alabama has a "Guest Law" which bars recovery by a guest passenger from his host unless the latter is guilty of "willful or wanton misconduct". Mississippi does not have such a statute. Under Alabama law, the recovery is limited to punitive damages, while Mississippi law permits recovery of compensatory damages for "all the damages of every kind to the decedent and all damages of every kind to any and all parties interested in the suit". All of the essential elements of the cen-

ter-of-gravity or most substantial relationship rule which persuaded the Mississippi Supreme Court to adopt such a rule in Mitchell v. Craft, and to follow it in Turner v. Pickens are present in the action sub judice.

The court concludes that the most substantial relationship of the parties and the dominant interest of the forum require application of Mississippi law to the determination of the rights and liabilities of the parties in this action.

Since the court holds that the law which controls the action sub judice is the law of Mississippi, it is not necessary to decide whether Mrs. Pearson's conduct on the occasion in question was "willful or wanton" within the meaning of Section 95, Title 36, Alabama Code, 1958, recompiled.

The court, in the oral opinion rendered from the bench at the conclusion of the trial, held that the facts surrounding the undertaking in which Galloway and Mrs. Pearson were engaged at the time of the accident required the court to hold that they were engaged in a "joint venture". The court therefore requested that counsel submit briefs on the question of whether a member of a joint venture may sue another member thereof for damages sustained because of the negligence of such other member while engaged in the performance of his duties in connection with the joint venture. The court, at the time of this finding, had in mind two Mississippi cases; Terry v. Smylie, 161 Miss. 31, 133 So. 662 (1931), and Avent v. Tucker, 188 Miss. 207, 194 So. 596 (1940). After a careful re-examination of these cases, the court has reached the conclusion that each of them can be distinguished factually from the case sub judice.

In Terry v. Smylie, *supra*, Lyman Terry and his brother, Dowan Terry, were driving to a pier on the Gulf of Mexico near Biloxi, Mississippi, when their automobile collided with an automobile in which plaintiff Smylie was an occupant. The plaintiff sued both brothers

for damages and recovered judgment of both defendants. On appeal, Lyman Terry contended that he could not be held liable for damages because his brother, Dowan Terry, was the driver of the vehicle. The evidence showed that Lyman Terry owned the automobile in which he and his brother were riding; that the brother was driving; and that they were driving to the pier for the purpose of taking a boat to the Isle of Caprice, a pleasure resort in the Mississippi sound, where they were going for recreation. The court said:

> Appellant Lyman Terry was not a mere guest—the relationship of master and servant existed between them. Appellant Dowan Terry was driving the car not only to serve his own purposes, but to serve the purposes of his brother, Lyman Terry. They were going on a joint enterprise—it is true, not a business enterprise, but a mission of pleasure. However, that fact did not make their relation that of host and guest; in the operation of the car their relation was that of master and servant, as much so as if they had been going on a business trip. Appellant Lyman Terry was therefore liable, of course, for the negligence of his servant, Dowan Terry. 133 So. at 664.

The case of Avent v. Tucker, *supra*, involved the question of the liability of the wife for the tortious act of her husband. The husband and wife, Mr. and Mrs. Avent, started from their home in an automobile owned by the wife and driven by her husband on a trip to Minter City, Miss., where Mr. Avent was to secure a paper and they were to pick up the mail. En route to Minter City, they collided with an automobile in which Tucker was riding. As a result of the collision, Tucker was killed and his widow and two minor children sued both Mr. and Mrs. Avent. On the issue of Mrs. Avent's liability, the court said:

> On the first proposition there is no question but that both the husband and wife had started in the automobile owned by the wife to Minter City to get the mail, or that they were driving together for that mutual purpose on the joint mission or venture, and it seems to us to be beyond cavil that Mrs. Avent was not the guest of her husband. We are of the opinion that the facts and law as announced in Terry v. Smylie, 161 Miss. 31, 133 So. 662, absolutely control the decision of this point. . . . Avent was the agent or servant of his wife on this occasion. 194 So. at 599, 600.

The facts in the action sub judice are different from the facts in Terry v. Smylie, *supra*, and Avent v. Tucker, *supra*, in at least one material respect. In both of those cases the owner of the automobile was not the driver. In the case sub judice, Mrs. Pearson was both the owner and driver of the automobile. Galloway was only a passenger.

The husband-wife joint venture or enterprise as it exists in Mississippi was the subject of an excellent and exhaustive opinion by the Fifth Circuit in Woodard v. St. Louis-San Francisco Railway Company, 418 F.2d 1305 (1969). In its reference to Avent v. Tucker, the court said:

> The facts of the case seem to indicate an agency relationship subjecting the wife to liability rather than a joint venture situation. The language of the opinion is not such as to permit us to determine the legal theory upon which the Mississippi court sustained the finding of liability of the wife who was owner and passenger for the negligence of the husband who was the driver. 418 F.2d at 1307.

In Marr v. Nichols, Miss., 208 So.2d 770 (1968) the Mississippi Supreme Court held that going to church was not the kind of a joint enterprise which would cause the negligence of the husband-driver to be imputed to the wife-passenger.

Because the court holds, as hereinafter set forth, that the plaintiff in the action sub judice has a right of action against defendant, even though Mrs.

Pearson and Galloway might have been engaged in a joint venture or enterprise at the time of the fatal accident, it is not necessary for the final determination of the action sub judice that the court determine the actual legal relationship of the parties at the time of the accident. The facts surrounding the creation of the relationship are undisputed, and, should such a decision hereafter become necessary, the question will be one of law for the court. Marr v. Nichols, *supra.* Consequently, the court withdraws that portion of the decision rendered orally from the bench at the conclusion of the trial in which the court held that Mrs. Pearson and Galloway were engaged in a joint venture at the time of the accident.

The court concludes that in Mississippi a member of a joint venture or enterprise may sue another member thereof for damages sustained because of the negligence of such other member in the performance of his duties in connection with the joint venture. This being true, Galloway, had he lived, even though he was at the time engaged in a joint venture with Mrs. Pearson, which fact the court does not at this time decide, could have sued Mrs. Pearson for damages proximately caused by her negligence. The Mississippi Wrongful Death Statute, *supra,* authorizes the personal representative of a decedent to sue for damages for his death in cases where the decedent, if he had lived, would have been entitled to maintain an action and recover damages in respect to injuries suffered by him. It follows, then, that plaintiff may maintain the action sub judice against defendant.

The rule is well established in Mississippi that a guest passenger may sue his host-driver for damages suffered on account of the negligence of the host-driver in the operation of the automobile. See, Turner v. Pickens, *supra*; Gregory v. Patrick, Miss., 204 So.2d 466 (1967); Marsh v. Johnson, Miss., 209 So.2d 906 (1968); Nobles v. Unruh, Miss., 198 So.2d 245 (1967); and Petersen v. Klos, 426 F.2d 199 (5th Cir. 1970). While the question of joint venture was not discussed in Turner v. Pickens, yet a recovery was allowed in a factual situation similar to the action sub judice. There the parties made a motor trip from Mississippi to Illinois. They shared the expense of the trip. The purpose of the trip was to attend a funeral and visit relatives. The owner was driving the truck when the accident occurred. These facts are essentially on all-fours with the action sub judice. If the joint venture issue had been raised in the Turner v. Pickens and the recovery affirmed, the case would most assuredly control here.

In 8 Am.Jur.2d Automobiles and Highway Traffic, § 681, it is said:

The negligence of one member of a joint enterprise driving a motor vehicle may not be imputed to another member of the joint enterprise riding with him, for the purpose of precluding liability of the former to the latter for personal injuries resulting from the negligent operation of the vehicle. In other words, where one joint adventurer is guilty of a tortious act in the operation of a motor vehicle to the damage of an associate in the joint adventure, he must respond in damages.

To the same effect is 61 C.J.S. Motor Vehicles § 486(1), page 159, which is as follows:

With respect to the contributory negligence of the occupant, in case of an injury through the negligence of the driver, the fact that they were engaged in a joint adventure is immaterial; and even though they are engaged in such an adventure they owe each other the duty to exercise ordinary care.

Turning to the final question—the amount of damages which plaintiff is entitled to recover—, the court fixes this amount at the sum of $115,000.00, the basis of which is set forth hereinafter.

Plaintiff cannot recover any sum for pain and suffering for the evidence

shows that Galloway's death was instantaneous. Plaintiff cannot recover medical expenses of the decedent for there is no evidence in the record to justify such an award. Plaintiff can recover for the value of the loss of companionship and society suffered by Galloway's wife and thirteen year old son by a former marriage on account of his death.

Galloway was divorced from his first wife in November 1968. The custody of the child of the parties is vested in the mother. Galloway was granted visitation rights which he exercised, and contributed $44.00 per week to his child's support. The evidence reflects a good relationship between father and son.

Galloway contributed some support to the surviving wife; the plaintiff in this action. The amount is not disclosed. The family residence was in Bruce, Mississippi where Mrs. Galloway resides and where she is employed as a legal secretary. Galloway rented quarters in Pontotoc, where he lived, and the evidence does not disclose the usual warmth of a marriage to have existed between Galloway and his wife at the time of his death.

■ Plaintiff is entitled to recover for the loss of companionship by the son, but the evidence does not justify the court in making an award for the loss of society and companionship by the wife. This finding is reinforced by the undisputed fact that at the Christmas season, when family ties are usually the strongest, Galloway elected to accompany his lady friend on a trip to visit her relatives at a distant point. The evidence shows that any support which the surviving wife received from Galloway during his lifetime, and the weekly support money paid by him for the use of his minor son came from Galloway's earnings.

■ The plaintiff is entitled to recover the net cash value of the life expectancy of Galloway at the time of his death. In computing this value, the court must take into consideration such earnings as Galloway might reasonably have expected to earn during his lifetime. For the court to award any amount for the support and/or gratuities which Galloway's surviving wife and son might reasonably have expected to receive from him had he lived, would be to pyramid damages. The Mississippi Supreme Court has held that this cannot be done. See, New Deemer Manufacturing Co. v. Alexander, supra; Gulf, M. & N. R. Co. v. Graham, 153 Miss. 72, 117 So. 881 (1928).

The record shows that Galloway was 43 years of age. He was in good health and held a permanent job at which he was capable of earning substantial wages. During the last year of his life he earned $10,532. Galloway was engaged as a foreman with a pipeline construction crew. He was capable and well qualified in his field. Galloway had a life expectancy of 31.8 years. If Galloway had lived and continued to earn approximately $10,000. per year for the remainder of his life, he would have earned approximately $310,000. This amount discounted at a rate of 5%, which under present economic conditions the court finds to be proper, would have a present value of $155,930. Although a work expectancy table was not introduced in evidence, a retirement of age of 65 years is not unreasonable. Thus, Galloway could have expected, if it were not for his untimely death, to have earned substantial wages for a period of 22 years, or, at the salary rate in effect at the time of his death, the total amount of $220,000. Applying a discount rate of 5% to the sum, the present value of $131,163.

In fixing the "net cash value of the life of the deceased", the court must take into consideration the elements of damages, discussed hereinbefore, in light of all evidence in the record material to the issue. The court is charged with fixing the award in such reasonable amount as the court may determine to be just, "taking into consideration all the damages of every kind to the decedent and all damages of every kind to any and all parties interested in the

suit". Miss.Code Ann. § 1453 (1971 Supp.).

In making the award, the court has in mind the Latin maxim so eloquently used by Presiding Justice Henry Lee Rodgers in his dissent to the opinion of the Mississippi Supreme Court in Illinois Central R. R. Co. v. Gwin, 246 Miss. 67, 149 So.2d 340 (1963), " 'Corpus humanum non recipit aestimationem', and which means a human body is not susceptible of appraisement". 149 So.2d at 344.

The court summarizes the award as follows:

| | |
|---|---|
| 1) The net cash value of the life of the deceased, the sum of | $100,000.00 |
| 2) The value of the loss of companionship by the thirteen year old son of the deceased, the sum of | $ 15,000.00 |
| Total award | $115,000.00 |

A judgment for the amount indicated will be entered by the clerk.